```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF TENNESSEE

 3                          AT WINCHESTER
     ------------------------------------------------------------
 4                                      :
     TONY A. GUNTER,                    :
 5                                      :
              Plaintiff,               :
 6                                      :
     v.                                 :           4:16-CV-37
 7                                      :
     BEMIS COMPANY, INC.,               :
 8                                      :
              Defendant.               :
 9   ------------------------------------------------------------
                                    Chattanooga, Tennessee
10                                  April 14, 2017

11        BEFORE:  THE HONORABLE TRAVIS R. McDONOUGH
                   UNITED STATES DISTRICT JUDGE
12
     APPEARANCES:
13
              FOR THE PLAINTIFF:
14
              HEATHER MOORE COLLINS
15            ANNE HUNTER WILLIAMS
              Collins & Hunter, PLLC
16            7000 Executive Center Drive, Suite 320
              Brentwood, Tennessee  37027
17

18            FOR THE DEFENDANT:

19            JONATHAN O. HARRIS
              THOMAS W. WHITWORTH
20            Ogletree, Deakins, Nash,
              Smoak & Stewart, P.C.
21            SunTrust Plaza, Suite 1200
              401 Commerce Street
22            Nashville, Tennessee  37219

23

24                          JURY TRIAL
                         FIFTH DAY OF TRIAL
25
```

1          (The proceedings were held outside the presence of

2          the jury, as follows:)

3          THE COURT:  All right.  Good morning --

4          MR. HARRIS:  Good morning.

5          THE COURT:  -- everybody.  The first thing I want to

6 do is -- before I charge the jury, is just to confirm what I

7 think everybody already knows with regard to the remedies

8 available to the jury, that I'm going to find that

9 reinstatement in this case is not feasible.  The -- although

10 the plaintiff testified that he would like to have his job

11 back, the defendant has put on proof that it's not, in its

12 opinion, safe to do so.

13       And while the defendant has pointed to the

14 plaintiff's request to be reinstated as a potential reason not

15 to make front pay available as a remedy, I don't -- I have not

16 heard the defendant put on any evidence that -- or make a

17 request that it has actually requested that the Court consider

18 reinstatement.  So I'll give you-- Are there any objections

19 to that ruling?

20       MR. HARRIS:  Your Honor, the defendants, again,

21 object.  And it's very clear that reinstatement is the

22 preferred remedy.  That's what the law says.  The reason this

23 man was fired was because of our determination he could not be

24 reasonably accommodated.  But if the jury disagrees with us,

25 then they're necessarily finding that he's qualified to perform

1    the essential functions of the job and therefore disagreeing

2    with our view of whether he could do it or not.  He says he

3    wants his job back.  It is not our burden to prove

4    reinstatement is feasible; it's the plaintiff's burden to show

5    why it is not.  And just like we follow doctors' orders, we

6    follow judges' orders.  If the Judge says he goes back, he goes

7    back.  That's our objection.

8              THE COURT:  Okay.  Anything from the plaintiff?

9              MS. COLLINS:  No, Your Honor.

10             THE COURT:  Okay.

11             MS. COLLINS:  What you said makes sense.

12             THE COURT:  All right.  We have, after a few

13    machinations and some more work, I think, arrived at a much

14    better verdict form than we discussed yesterday.  You have a

15    copy of that verdict form, which is what will go back to the

16    jury.  And I will give you a chance now to make any objections

17    to the form that you've not already made.  Are there any

18    objections?

19             MR. HARRIS:  Your Honor, with respect, we -- we

20    object to the verdict form.  As far as the good faith defense,

21    it is our view that because this entire case revolves around a

22    reasonable accommodation scenario, the good faith defense

23    should apply to all the claims in this case.  And so we lodge

24    that objection.

25             THE COURT:  Okay.

 1              MR. HARRIS:  And that's it.

 2              THE COURT:  Okay.

 3              All right.  Ms. Collins, Ms. Hunter, anything to

 4     add?

 5              MS. COLLINS:  Nothing to add, Your Honor.

 6              THE COURT:  All right.  With regard to the jury

 7     instructions, we made a few little changes -- couple of little

 8     changes this morning.  Let me just review those with you and

 9     give you an opportunity to object if there is an issue.

10              So on Page 30, Jury Instruction Number 27, I have

11     changed -- in the last sentence, I'm using the word -- or the

12     phrase "actual damages" instead of "compensatory damages,"

13     which was on the version that we discussed yesterday.  Is

14     there any objection to that change?

15              MR. WHITWORTH:  No objection.

16              MS. COLLINS:  No objection.

17              THE COURT:  All right.  And then we did not discuss

18     this, but on Page 33, Jury Instruction Number 30, it previously

19     read "marshal," and I'm going to make that "courtroom deputy."

20     So tell me now if you have an objection.

21              And on Page 34, within the same instruction, as we

22     dis- -- as we -- as you know, I'm going to, at the very end,

23     tell the jury that I will -- quote, "I will now review the

24     verdict form with you," and then I'll go over the verdict form

25     that we've just discussed.

1            Are there any objections to those changes?

2            MR. WHITWORTH:  No objection.

3            MS. COLLINS:  No objection.

4            THE COURT:  All right.  Anything else to take up

5    before we bring the jury in and charge the jury?

6            MS. COLLINS:  Your Honor, could I have an updated set

7    of the jury instructions?  I can't seem to find mine from last

8    night.  I'm sorry.

9            THE COURT:  You should have the one from this

10   morning, right?  Didn't we pass that out?

11           MS. COLLINS:  No.  I got the verdict form.

12           THE COURT:  Okay.  Do you have a new version,

13   Mr. Harris?

14           MR. HARRIS:  I don't think we do, Judge.

15           THE COURT:  Let's make sure that he does, too,

16   before --

17           MS. HUNTER:  Yeah, if there was more copies, that

18   would be great.

19           MR. HARRIS:  And, Judge, just from a procedural

20   standpoint, after you read in the objections, so that we can

21   preserve them, how do you handle that?  Can we just say, "Your

22   Honor, we renew our objections as previously discussed"?

23           THE COURT:  After the instructions?

24           MR. HARRIS:  Yeah.

25           THE COURT:  I think you've preserved your objections

1  to the substance.  When I ask you for objections after the

2  charge --

3          MR. HARRIS:  Uh-huh.

4          THE COURT:  -- what I'm really asking is, did I mess

5  up reading that.  And you can let me know.

6          MR. HARRIS:  And the cautious person inside of me,

7  reading Sixth Circuit case law, thinks we have to renew.

8          THE COURT:  I'm--  If you need to do that, I'll --

9  that's fine.

10          MR. HARRIS:  Okay.

11          THE COURT:  Just wait until we dismiss the jury.

12          MR. HARRIS:  Okay.

13          THE COURT:  All right.  Okay.  Let's bring them in,

14  Ms. Hinton.

15          THE COURTROOM DEPUTY:  Okay.

16          (Brief pause.)

17          (The jury entered the courtroom, and the proceedings

18          continued as follows:)

19          THE COURT:  All right.  Thank you, ladies and

20  gentlemen.  Good morning.  At this point I'm going to give you

21  your charge.  I'm going to read the jury instructions to you.

22  This will probably, I'd say, take more or less a half hour.  So

23  be patient, and listen intently, please.

24          Members of the jury, now it is time for me to

25  instruct you about the law that you must follow in deciding

1    the case.  At the start of this case I gave you some

2    guidelines on the applicable law.  I will now instruct you on

3    the law that you should use in reaching your verdict.  These

4    instructions on the applicable law supersede any earlier

5    statements on the law which I gave you at the start of the

6    case.

7           I will start by explaining your duties and the

8    general duties that -- general rules that apply in every civil

9    case.  Then I will explain some rules that you must use in

10   evaluating particular testimony and evidence.  And last I will

11   explain the law relating to the claims made in the plaintiff's

12   case.  Please listen very carefully to everything I say.

13          You have two main duties as jurors.  The first is to

14   decide what the facts are from the evidence that you saw and

15   heard here in court.  Deciding the facts is your job, not

16   mine, and nothing that I have said or done during this trial

17   was meant to influence your decision about the facts in any

18   way.

19          Your second duty is to take the law that I give you,

20   apply it to the facts, and decide whether the plaintiff has

21   established that the defendant terminated his employment

22   because of his disability, in violation of the ADA, the

23   Americans with Disabilities Act.

24          It is my job to instruct you about the law, and you

25   are bound by the oath that you took at the beginning of the

1  trial to follow the instructions that I give you, even if you

2  personally disagree with them.  This includes the instructions

3  that I gave you before and during the trial and these

4  instructions.  All the instructions are important, and you

5  should consider them together as a whole.

6       The lawyers have talked about the law during their

7  arguments, but if what they said is different from what I say,

8  you must follow what I say.  What I say about the law

9  controls.

10      Perform these duties fairly.  Do not let any bias,

11  sympathy, or prejudice that you may feel toward one side or

12  the other influence your decision in any way.  The Court, the

13  parties, and the public expect that you will carefully and

14  impartially consider all of the evidence in the case, follow

15  the law as stated to you by the Court, and arrive at a verdict

16  that you think is just, fair, and right under the proof.

17      Now, let's talk for a moment about evidence.  You

18  are to decide this case only from the evidence which was

19  presented at this trial.  The evidence consists of (1) the

20  sworn testimony of the witnesses who have testified, both in

21  person and by deposition, (2) the exhibits that were received

22  and marked as evidence, (3) any facts to which all the lawyers

23  have agreed or stipulated, and (4) any other matters that I

24  have instructed you to consider as evidence.

25      By contrast, the questions of a lawyer are not to be

1 considered by you as evidence. It is the witness's answers
2 that are evidence, not the questions directed at them. At
3 times a lawyer may have incorporated into a question a
4 statement which assumed certain facts to be true, and asked
5 the witness if the statement was true. If the witness denies
6 the truth of the statement, and if there is no evidence
7 proving that assumed fact to be true, then you may not
8 consider it to be true simply because it was contained in the
9 lawyer's question.

10      Testimony that has been stricken or excluded is not
11 evidence and may not be considered by you in rendering your
12 verdict. Also, if certain testimony was received for a
13 limited purpose only, such as for the purpose of assessing a
14 witness's credibility, you must follow the limiting
15 instructions I have given.

16      Arguments by lawyers are not evidence because the
17 lawyers are not witnesses. What they have said to you in
18 their opening and closing statements is intended solely to
19 help you understand the evidence in order to reach your
20 verdict. If your recollection of the facts differs from the
21 lawyers' statements, it is your recollection which controls.

22      To be evidence, exhibits must be received into
23 evidence. Exhibits marked for identification but not admitted
24 are not evidence nor are materials brought forth only to
25 refresh a witness's recollection.

1    Finally, statements which I may have made concerning

2    the quality of the evidence are not evidence.  It is for you

3    alone to decide the weight, if any, to be given to the

4    testimony you have heard and the exhibits you have seen.

5    There are two types of evidence, direct evidence and

6    circumstantial evidence.  Direct evidence is simply evidence,

7    like the testimony of an eyewitness which, if you believe it,

8    directly proves is fact.  If a witness testified that he saw

9    it raining outside, and you believed him, that would be direct

10   evidence that it was raining.

11   Circumstantial evidence is simply a chain of

12   circumstances that indirectly prove a fact.  If someone walked

13   into the courtroom wearing a raincoat covered with drops of

14   water and carrying a wet umbrella, that would be

15   circumstantial evidence from which you could conclude that it

16   was raining.

17   It is your job to decide how much weight to give to

18   direct and circumstantial evidence.  The law makes no

19   distinction between the weight that you should give to either

20   one or say that one is any better evidence than the other.

21   You should consider all the evidence, both direct and

22   circumstantial, and give it whatever weight you believe it

23   deserves.

24   You should use your common sense in weighing the

25   evidence.  Consider it in light of your everyday experience

1  with people and events, and give it whatever weight you

2  believe it deserves.

3        You are the sole and exclusive judges of the

4  credibility or believability of the witnesses who have

5  testified in this case.  You must decide which witnesses you

6  believe and how important you think their testimony is.  You

7  are not required to accept or reject everything a witness

8  says.  You are free to believe all, none, or part of a

9  person's testimony.

10       In deciding which testimony you believe, you should

11 rely on your own common sense and everyday experience.  There

12 is no fixed set of rules to use in deciding whether you

13 believe a witness, but it may help you to think about the

14 following questions:

15       (1) Was the witness able to see, hear, or be aware

16 of the things about which the witness testified?

17       (2) How well was the witness able to recall and

18 describe those things?

19       (3) How long was the witness watching or listening?

20       (4) Was the witness distracted in any way?

21       (5) Did the witness have a good memory?

22       (6) Did the witness look and act while tes- -- how

23 did the witness look and act while testifying?

24       (7) Was the witness making an honest effort to tell

25 the truth, or did the witness evade questions?

1    (8) Did the witness have any interest in the outcome

2 of the case?

3    (9) Did the witness have any motive, bias, or

4 prejudice that would influence the witness's testimony?

5    (10) How reasonable was the witness's testimony when

6 you consider all of the evidence in the case?

7    (11) Was the witness's testimony contradicted by

8 what that witness has said or done at another time, by the

9 testimony of other witnesses, or by other evidence?

10    (12) Has there been evidence regarding the witness's

11 intelligence, respectability, or reputation for truthfulness?

12    (13) Has the witness's testimony been influenced by

13 any promises, threats, or suggestions?

14    (14) Did the witness admit that any part of the

15 witness's testimony was not true?

16    Now, a witness may be discredited or impeached by

17 contradictory evidence or by evidence that at some other time

18 the witness has said or done something or has failed to say or

19 do something that is inconsistent with the witness's present

20 testimony.  If you believe any witness has been impeached and

21 thus discredited, you may give the testimony of that witness

22 such credibility, if any, you think it deserves.

23    If a witness is shown knowingly to have testified

24 falsely under oath about any material matter, you have the

25 right to distrust such witness's other testimony, and you may

1  reject all of the testimony of that witness or give it such

2  credibility as you may think it deserves.

3  　　　　　An act or omission is knowingly done if voluntarily

4  and intentionally and not because of mistake or accident or

5  some other innocent reason.

6  　　　　　Now, the law does not require any party to call as

7  witnesses all persons who may have been present at any time or

8  place involved in the case or who may appear to have some

9  knowledge of the matters in issue in this trial.  Nor does the

10  law require that any -- any party to produce as exhibits all

11  papers and all things mentioned in the evidence in the case.

12  　　　　　Let me talk to you for a moment about the burden of

13  proof.  The plaintiff has the burden of proof in this case.

14  The party who has the burden of proof must carry that burden

15  by a preponderance of the evidence.  This means simply the

16  greater weight of the evidence.  It may be helpful -- if may

17  be helpful to envision a set of balancing scales.  After

18  considering all the proof on a particular element of the

19  plaintiff's case, the scales must be tipped in favor of the

20  plaintiff on that issue for the plaintiff to prevail on that

21  issue.  If the weight of the evidence is equally balanced, or

22  if you are unable to determine which side of an issue has the

23  preponderance, the plaintiff does not prevail on that issue.

24  　　　　　A preponderance of the evidence, thus, means such

25  evidence as, when considered and compared with that opposed to

1   it, has more convincing force and produces in your minds a

2   belief that what is sought to be proved is more likely true

3   than not true.  In other words, to establish a claim by a

4   preponderance of the evidence merely means to prove that the

5   claim is more likely so than not so.  Mere speculation or mere

6   possibility is not sufficient to support a judgment in

7   plaintiff's favor.

8           In determining whether any fact in issue has been

9   proved by a preponderance of the evidence, you should consider

10  the testimony of all the witnesses, regardless of who may have

11  called them, and all the exhibits received in evidence,

12  regardless of who may have produced them.

13          Let me talk a bit more about preponderance of the

14  evidence.  As I said, it's the plaintiff's burden to prove

15  every element of his claim by a preponderance of the evidence.

16  If the plaintiff should fail to establish any element of his

17  claim by a preponderance of the evidence, you should find for

18  defendant as to that claim.

19          To establish something by a preponderance of the

20  evidence means to prove that something is more likely so than

21  not so.  In other words, a preponderance of the evidence means

22  such evidence as, when considered and compared with the

23  evidence opposed to it, has more convincing force and produces

24  in your minds belief that what is sought to be proved is more

25  likely true than not true.  This standard does not require

1 proof to an absolute certainty, since proof to an absolute

2 certainty is seldom possible in any case.

3     You may have heard of the term proof beyond a

4 reasonable doubt.  That is a stricter standard that applies in

5 criminal cases.  It does not apply in civil cases such as

6 this.  You should therefore put it out of your minds.

7     Now, this case is about -- this case should be

8 considered and decided by you as an action between persons of

9 equal worth and equal standing in the community.  Corporations

10 like the defendant are entitled to the same fair trial at your

11 hands as a private individual.  All persons, including

12 individuals and corporations, stand equal before the law, and

13 are to be dealt with as equals in a court of justice.

14     I also instruct you that sympathy or hostility must

15 not enter into your deliberation as jurors no matter what your

16 sympathy or hostility may lead you to think.  Neither sympathy

17 nor hostility has any place in a trial of a lawsuit or in the

18 making up of your minds as to what your verdict shall be.  Do

19 not permit any such emotional considerations to enter into

20 your deliberations at all.

21     So let's talk about the causes of actions.  The

22 Americans with Disabilities Act, referred to frequently as the

23 ADA, prohibits an employer from discriminating against an

24 employee with a disability if that employee is otherwise

25 qualified to perform the essential functions of his or her job

1  with or without reasonable accommodation.  In this case

2  plaintiff claims that defendant discriminated against him by

3  (1) failing to engage in an interactive process with him in

4  good faith, (2) failing to provide him with a reasonable

5  accommodation, and (3) terminating his employment because of

6  disability.  Defendant denies the plaintiff's claims.

7       To prove a claim for discriminatory discharge in

8  violation of the ADA, plaintiff must first prove by a

9  preponderance of the evidence that (1) during the relevant

10 time frame of his employment with defendant, plaintiff had a

11 disability——and I will define the term _disability_ for you

12 later——(2) he was qualified to perform all of the essential

13 functions of his job as a press assistant, with or without a

14 reasonable accommodation——again, I'll define the terms

15 _essential function_ and _reasonable accommodation_ for you——and

16 (3) defendant terminated his employment because of a

17 disability.

18      If you find that plaintiff has proven all three of

19 these elements by a preponderance of the evidence, your

20 verdict on plaintiff's discharge claim must be in favor of

21 plaintiff.  If you find that plaintiff has failed to prove all

22 three of these elements by a preponderance of the evidence,

23 your verdict on plaintiff's discharge claim must be in favor

24 of defendant.

25      At all times the burden of persuasion is on the

1   plaintiff to prove that the defendant terminated his

2   employment because of disability discrimination.

3           To prove his claim that defendant violated the ADA

4   by failing to provide him with a reasonable accommodation of a

5   disability, plaintiff must prove by a preponderance of the

6   evidence that (1) he had a disability at the time he was

7   employed by the defendant, (2) he was qualified -- he was a

8   qualified individual able to perform the essential functions

9   of his job as a press assistant, (3) he requested that

10  defendant provide him with a reasonable accommodation of his

11  disability, and (4) defendant failed to provide a reasonable

12  accommodation.

13          If you find that plaintiff has proven all four of

14  these elements by a preponderance of the evidence, your

15  verdict must be in favor of plaintiff.  If you find that

16  plaintiff has failed to prove all four of these elements by a

17  preponderance of the evidence, your verdict must be in favor

18  of defendant.

19          Let's talk about the definition of disabled.  In

20  order to prove his claim that defendant failed to provide him

21  with a reasonable accommodation and/or discriminated against

22  him based on a disability, plaintiff must first prove that he

23  was disabled as defined by the ADA.

24          A disability is a physical or mental impairment that

25  substantially limits one or more of the major life activities.

1    You should apply the term disability broadly.  As amended by

2    the ADAAA, another act, the ADA defines major life activities

3    as including, but not limited to, caring for oneself,

4    performing manual tasks, seeing, hearing, eating, sleeping,

5    walking, standing, lifting, bending, speaking, breathing,

6    learning, reading, concentrating, thinking, communicating, and

7    working.  A major life activity also includes the operation of

8    a major bodily function, including, but not limited to, the

9    immune system, cell growth, digestion, elimination (bowel and

10   bladder), the nervous system, the brain, the respiratory

11   system, circulation, the endocrine system, and the

12   reproductive system.

13           In determining whether plaintiff's impairment

14   substantially limits a major life activity, you should compare

15   his ability to perform a major life activity with that of the

16   average person.  In doing so, you should consider (1) the

17   nature and severity of the impairment, (2) how long the

18   impairment will last or is expected to last, and (3) the

19   permanent or long-term impact or expected impact of the

20   impairment.  Temporary impairments with little or no long-term

21   impact are not sufficient.  In determining whether an

22   impairment substantially limits a major life activity, you

23   must consider the impairment without regard to the effects of

24   such measures as medication, therapies, or surgery.  In doing

25   so, you may consider evidence of the expected course of a

1  particular disorder without medication, therapies, or surgery.

2          Let's discuss the definition of substantially

3  limited.  Under the ADA an impairment substantially limits a

4  major life activity if it prevents or severely restricts

5  plaintiff in comparison to the average person in the general

6  population.  Working is a major life activity.  An impairment

7  need not prevent or significantly or severely restrict the

8  individual from performing a major life activity in order to

9  be considered substantially limiting.  Nonetheless, not every

10  impairment will constitute a disability within the meaning of

11  this section.  Only impairments with permanent or long-term

12  impact are disabilities under the ADA.

13          Now let's discuss the definition of qualified.

14  Under the ADA, plaintiff was qualified if he had the skill,

15  experience, education, and other requirements for the job and

16  could do the job's essential functions, either with or without

17  a reasonable accommodation.  You should only consider

18  plaintiff's abilities at the time when defendant placed him

19  out of work in July 2014.

20          Not all job functions are essential.  Essential job

21  functions are a job's fundamental duties.  In deciding whether

22  a function is essential, you may consider the reasons the job

23  exists, the number of employees defendant has to do that kind

24  of work, the degree of specialization the job requires,

25  defendant's judgment about what is required (for example, his

 1   job description), the consequences of not requiring an

 2   employee to satisfy that job -- that function, and the work

 3   experience of others who held the position.

 4          Now let's discuss the definition of <u>essential</u>

 5   <u>function</u>.  In order to be otherwise qualified for the position

 6   under the ADA, plaintiff must prove that he could perform the

 7   essential functions of his job with or without a reasonable

 8   accommodation.  The phrase <u>essential functions of the job</u>

 9   means the fundamental duties of the job the plaintiff was

10   required to perform.

11          In determining whether a job duty is an essential

12   function, you may consider (1) the employer's judgment as to

13   which functions are essential, (2) the written job description

14   for the position, (3) the amount of time spent performing the

15   function, (4) the consequences of not requiring the employee

16   to perform the function, (5) the work experience of past

17   employees in the job, (6) the current work experience of

18   persons with similar jobs; and/or (7) who has performed the

19   function in practice.  A job function that is only

20   occasionally performed may still be necessary and considered

21   an essential function of the job.  No one of these factors is

22   controlling.

23          Let's discuss <u>reasonable accommodation</u>.  Under the

24   ADA, to accommodate a disability is to make some change that

25   will let a person with a disability perform his job.  An

1    accommodation is reasonable if it is effective and its costs

2    are not clearly disproportionate to the benefits that it will

3    produce.  A reasonable accommodation may include a change in

4    such things as ordinary work rules, facilities, conditions, or

5    schedules, but does not include elimination or change of

6    essential job functions, assignment of essential job functions

7    to other employees, or lower productivity standards.  However,

8    shifting marginal duties to other employees who can easily

9    perform them is a reasonable accommodation.

10         Plaintiff bears the burden of proposing an

11    accommodation and showing that the accommodation is

12    objectively reasonable.  An accommodation that eliminates an

13    essential function of the job is not reasonable.

14         The ADA does not require employers to create new

15    jobs or displace existing employees from their positions in

16    order to accommodate a disabled individual.

17         Once an employer is aware of an employee's

18    disability and an accommodation has been requested, the

19    employer must discuss with the employee whether there is a

20    reasonable accommodation that will permit him to perform the

21    job.  Both the employer and the employee or applicant must

22    cooperate in this interactive process in good faith.

23         Now let's discuss damages.  I will now give you

24    instructions about how to calculate damages.  You should not

25    consider the fact that I am giving you this instruction as

suggestion -- as suggesting any view of mine as to which party is entitled to your verdict in this case or that I think you should award any damages.  Those are decision that are entirely for you to make.  I am giving you these instructions solely for your guidance in the event that you find in favor of plaintiff on his claim against defendant -- on his claims against defendant -- on a claim against defendant.  The fact that I do does not in any way mean that I think you should award any damages.  That is entirely for you to decide.

If you find that defendant has violated plaintiff's rights under the ADA, then you must determine the amount of damages that defendant's actions have caused plaintiff. Plaintiff has the burden of proving damages by a preponderance of the evidence.  You may award as actual damages an amount that reasonably compensates plaintiff for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that plaintiff would have received from defendant had plaintiff not been terminated.

Back pay damages, if any, apply from the time the plaintiff was placed out of work without pay until the date of your verdict.  Collateral source benefits, such as employment compensation, Social Security benefits, and pension benefits received by the plaintiff should not -- should not be offset or taken out of any back pay award the jury may deem appropriate.

1    The defendant has raised the defense that plaintiff

2 had a duty to make reasonable efforts to obtain other

3 employment after his separation from his employment with it in

4 order to mitigate his damages.  To do so, defendant must prove

5 that plaintiff failed to mitigate his damages.  Defendant may

6 satisfy its burden only if it establishes that (1) that were

7 substantially equivalent positions which were available, and

8 (2) plaintiff failed to use reasonable care and diligence in

9 seeking such positions.  However, an employee who is unable to

10 work due to a disability is not precluded from receiving back

11 pay when the employer caused the disability.

12    At times throughout this trial you have heard

13 reference to Social Security retirement benefits and Social

14 Security disability benefits.  You should not consider any

15 such evidence in deciding whether to find for the plaintiff or

16 for the defendant on any claim, and you should not consider

17 any such evidence in calculating damages in the event that you

18 find that the defendant violated the ADA.

19    You have heard testimony that the plaintiff planned

20 to work until age 67.  However, how long the plaintiff would

21 have worked is disputed.  Based on the evidence, you may find

22 that the plaintiff would have worked until age 67, or you may

23 find that the plaintiff would not have worked that long.

24 Either way, the availability of Social Security disability or

25 Social Security retirement benefits must have no impact on

1    your decisions concerning liability or damages.  There is no

2    evidence that the plaintiff qualifies for Social Security

3    disability benefits or Social Security retirement benefits at

4    this time.  In particular, you should ignore Page 2 of

5    Plaintiff's Exhibit 21 in this regard.  This document is not

6    evidence that the plaintiff presently qualifies for any Social

7    Security benefits.

8         If plaintiff proves by a preponderance of the

9    evidence that defendant terminated him in violation of the

10   ADA, you may also calculate separately, as future damages, a

11   monetary amount equal to the present value of the wages and

12   benefits that plaintiff would have earned had he not been

13   terminated for the period from the date of your verdict until

14   the date when plaintiff would have voluntarily resigned or

15   obtained other employment.

16        If you determine plaintiff is entitled to future

17   lost wages, you must consider the following in arriving at an

18   amount:  First, plaintiff's prospects for another job; second,

19   the length of time that it should take plaintiff to get such a

20   job; third, the number of years remaining before plaintiff

21   would most probably retire.

22        If you determine that an award of front pay is

23   appropriate, you must also reduce any award to its present

24   value by considering the interest plaintiff could earn on the

25   amount of the award if plaintiff had made a relatively

 1    risk-free investment.  The reason that you must make this

 2    reduction is because an award of an amount representing future

 3    loss of earnings is more valuable to plaintiff if plaintiff

 4    receives it today than if plaintiff received it in the future

 5    when plaintiff would otherwise have earned it.  It is more

 6    valuable because plaintiff can earn interest on it for the

 7    period of time between the date of the award and the date

 8    plaintiff would have earned the money.  Thus, you should

 9    adjust the amount for -- of any award for future loss of

10    earnings by the amount of interest that plaintiff can earn on

11    that amount in the future.

12         Collateral source benefits such as employment

13    compensation, Social Security benefits, and pension benefits

14    received by the plaintiff should not be offset, taken out of,

15    any back pay award -- excuse me, front pay award the jury may

16    deem appropriate.

17         Let's discuss compensatory damages.  If you find

18    that plaintiff was discriminated against based on his

19    disability, then you must determine an amount that you find by

20    a preponderance of the evidence is fair compensation for his

21    damages.  You may award compensatory damages only for injuries

22    that plaintiff proves were caused by defendant's allegedly

23    wrongful conduct.  The damages that you award must be fair

24    compensation, no more and no less.  You may award damages for

25    any pain, suffering, or mental anguish that plaintiff

1    experienced as a consequence of defendant's alleged

2    discrimination.

3              No evidence of the monetary value of such intangible

4    things as pain and suffering has been, or need be, introduced

5    into evidence.  You should consider the nature, character, and

6    seriousness of any pain and suffering, inconvenience, or

7    mental anguish that the plaintiff may have experienced, as

8    well as the extent and duration or whether it required medical

9    treatment.  There is no exact standard for fixing the

10   compensation to be awarded for these elements of damage;

11   however, any award you make should be fair in light of the

12   evidence presented at trial.

13             In determining the amount of damages that you decide

14   to award, you should be guided by common sense.  You must use

15   sound judgment in fixing an award of damages, drawing

16   reasonable inferences from the facts and evidence.  You may

17   not award damages based on sympathy, speculation, or

18   guesswork.  On the other hand, the law does not require that

19   plaintiff prove the amount of his damages with mathematical

20   precision but only with as much definiteness and accuracy as

21   circumstances permit.

22             Plaintiff claims the acts of defendant were done

23   with malice or reckless indifference to the plaintiff's

24   federally protected rights, so as to entitle the plaintiff to

25   an award of punitive damages in addition to the other damages.

1    In some cases punitive damages may be awarded for

2    the purpose of punishing a defendant for its wrongful conduct

3    and to deter others from engaging in similar wrongful conduct.

4    However, an employer may not be held liable for punitive

5    damages because of discriminatory acts on the part of its

6    managerial employees where those acts by such employees are

7    contrary to the employer's own good faith efforts to comply

8    with the law by implementing policies and programs designed to

9    prevent such unlawful discrimination in the workplace.

10    An award of punitive damages would be appropriate in

11    this case only if you find for plaintiff and then further find

12    from a preponderance of the evidence, first, that a management

13    official of defendant personally acted with malice or reckless

14    indifference to plaintiff's federally protected rights, and,

15    second, that defendant itself had not acted in good faith --

16    had not acted in a good faith attempt to comply with the law

17    by adopting policies and procedures designed to prohibit such

18    discrimination in the workplace.

19    If you find that punitive damages should be assessed

20    against defendant, you may consider the financial resources of

21    defendant in fixing the amount of such damages.

22    Now, if you return a verdict for plaintiff but he

23    has failed to prove actual injury and therefore is not

24    entitled to actual damages, then you must award nominal

25    damages of one dollar.  A person whose federal rights were

1   violated is entitled to a recognition of that violation, even

2   if he suffered no actual injury.  Nominal damages of one

3   dollar are designed to acknowledge the deprivation of a

4   federal right, even where no actual injury occurred.  However,

5   if you find actual injury, you must award actual damages, as I

6   instructed you, rather than nominal damages.

7          In this case defendant claims it made good faith

8   efforts to determine whether it could reasonably accommodate

9   plaintiff.  In cases where a discriminatory practice involves

10  the reasonable accommodation provision of the ADA, actual and

11  punitive damages may not be awarded where the employer

12  demonstrates good faith efforts in consultation with the

13  employee with a disability who has informed the covered entity

14  that accommodation is needed, to identify and make a

15  reasonable accommodation that would provide such individual

16  with an equally effective opportunity and would not cause an

17  undue hardship on the operation of the business.

18         To prove this defense to damages, defendant has the

19  burden of proving by a preponderance of the evidence that

20  defendant made a good faith effort, in consultation with

21  plaintiff, to try to identify a reasonable accommodation.

22         When considering what damages, if any, to award

23  plaintiff, you may not compensate him due to the fact that the

24  plaintiff was injured at work.  The ADA is not the mechanism

25  by which an employee may seek compensation for a workplace

1  injury.  Instead, Tennessee has a separate worker's
2  compensation law that provides that exclusive remedy under
3  which an employee may seek compensation for his on-the-job
4  injury.  Your job in this case is to determine whether the
5  decision to terminate his employment was a violation of the
6  ADA and, if so, what damages he suffered as a result of the
7  loss of the employment.

8         Now, finally, any verdict must represent the
9  considered judgment of each juror.  In order to return a
10 verdict, it is necessary that each juror agree thereto.  In
11 other words, your verdict must be unanimous.  It is your duty
12 as jurors to consult with one another and to deliberate in an
13 effort to reach agreement if can you do so without violence to
14 the individual judgment.

15        Each of you must decide the case for yourself, but
16 only after an impartial consideration of the evidence in the
17 case with your fellow jurors.  In the course of your
18 deliberations, do not hesitate to reexamine your own views and
19 change your opinion if convinced it is erroneous.  But do not
20 surrender your honest conviction as to the weight or effect of
21 the evidence solely because of the opinion of your fellow
22 jurors or for the mere purpose of returning a verdict.  You
23 are the judges, the judges of the facts.  Your sole interest
24 is to seek the truth from the evidence in the case.

25        Upon retiring to the jury room, you should first

1  select one of your number to act as your foreperson who will

2  preside over your deliberations and will speak for you here in

3  court.  A verdict form has been prepared for your convenience.

4  When you have reached unanimous agreement as to your verdict,

5  you will have your foreperson complete, date, and sign the

6  verdict form and then return to the courtroom.  If during your

7  deliberations you should desire to communicate with the Court,

8  please reduce your message or question to writing, signed by

9  the foreperson, and pass the note to the courtroom deputy, who

10  will bring it to my attention.  I will then respond as

11  promptly as possible, either in writing or by having you

12  return to the courtroom so that I can address you orally.  I

13  caution you, however, with regard to any message or question

14  you might send, that you should never state or specify the

15  vote of the jury at the time.

16          I will now review the verdict form with you.

17          You'll have a verdict form in the deliberation room,

18  and it will have questions for you to answer, first about

19  claims.

20          "Claim Number 1.  Do you find that plaintiff has

21  proven by a preponderance of the evidence all of the elements

22  required to establish that the defendant terminated the

23  plaintiff because of his disability?  There is a box for yes,

24  a box for no.  Check one.

25          "Claim 2.  Do you find that plaintiff has proven by

1   a preponderance of the evidence all of the elements required

2   to establish that defendant failed to engage in the

3   interactive process in good faith, as required under the

4   Americans with Disabilities Act?"

5           Again, a box for yes, a box for no.

6           "Claim 3.  Do you find that plaintiff has proven by

7   a preponderance of the evidence all of the elements required

8   to establish that defendant failed to accommodate plaintiff in

9   compliance with the Americans with Disabilities Act?"

10          Again, a box for yes, a box for no.

11          "Defenses.  Number 4, Do you find that the defendant

12  has proven by a preponderance of the evidence that it

13  demonstrated good faith efforts, in consultation with

14  plaintiff, to identify a reasonable accommodation?

15          There is a note that reads, "You cannot answer yes

16  to Question Number 4 if you answered yes to Question Number

17  2."  Then there is a box for yes and a box for no.

18          With regard to damages, there is a note, "If you

19  answered no to Question Number 1, Question Number 2, and

20  Question Number 3, stop and have the foreperson sign and date

21  this form on Page 5.  If you answered yes to Question

22  Number 1, Question Number 2, or Question Number 3, proceed to

23  Questions 5, 6, 7, 8, and 9.

24          "Question Number 5 is, Do you find that plaintiff

25  has proven by a preponderance of the evidence that he should

1    be awarded back pay?  There is a box for yes, a box for no.

2    If your answer is yes, it reads, "The jury awards plaintiff

3    back pay damages in the amount of" blank "dollars in

4    connection with the following claims.  Check all that apply.

5           "Claim 1, Claim 2, Claim 3.

6           "Question Number 6.  Do you find that plaintiff has

7    proven by a preponderance of the evidence that he should be

8    awarded front pay?  There's a box for yes, box for no.

9           "If your answer is yes, the jury awards plaintiff

10   front pay damages in the amount of" blank "dollars in

11   connection with the following claims.  Check all that apply.

12          "Claim 1, Claim Number 2, Claim Number 3.

13          "Question 7.  Do you find that plaintiff has proven

14   by a preponderance of the evidence that he should be awarded

15   compensatory damages?"  Box for yes, box for no.

16          "If your answer is yes, the jury awards plaintiff

17   compensatory damages in the amount of" blank "dollars in

18   connection with the following claims.  Check all that apply.

19          "Claim Number 1, Claim Number 2, Claim Number 3.

20          "Note:  If you answered yes to Question 5, Question

21   6, or Question 7, skip Question 8, and proceed to Question 9."

22          Question 8 reads, "Do you find that plaintiff has

23   proven by a preponderance of the evidence that he should be

24   awarded nominal damages?  Box for yes, box for no.

25          "If your answer is yes, the jury awards plaintiff

 1   nominal damages in the amount of" blank "dollars in connection

 2   with the following claims.  Check all that apply.

 3          "Claim 1, Claim 2, Claim 3.

 4          "Do you find -- to Question Number 9, do you find

 5   that plaintiff has proven by a preponderance of the evidence

 6   that he should be awarded punitive damages?"

 7          There is a box for yes, a box for no.

 8          "If your answer is yes, the jury awards punitive

 9   damages in the amount of" blank "dollars in connection with

10   the following claims.  Check all that apply.

11          "Claim 1, Claim 2, Claim 3."

12          The last page tells you, "Have the foreperson sign

13   and date this form and return it to the court officer."  There

14   is a blank for the foreperson's signature and a blank for the

15   date.

16          All right, ladies and gentlemen, I'm going to ask

17   you to go to the deliberation room.  And once the courtroom

18   deputy comes back and provides you with certain documents, you

19   may begin your deliberation at that time.

20          (The jury exited the courtroom, and the proceedings

21          continued as follows:)

22          THE COURT:  All right.  Have a seat, please.

23          Okay.  I will give you an opportunity in a moment to

24   do whatever you think you need to do to preserve objections,

25   but on Page 12 I did not repeat the third paragraph.  Does

 1    anybody have an objection to that?  It was exactly the same,

 2    and I just noticed that.

 3              MS. COLLINS:  No objection.

 4              THE COURT:  All right.

 5              The defense?

 6              MR. WHITWORTH:  No objection.

 7              THE COURT:  Okay.  I also, two or three times,

 8    changed compensatory to actual.  Did anybody have a problem

 9    with that?

10              MR. WHITWORTH:  No, Your Honor.

11              MS. COLLINS:  Your Honor, the only concern that I had

12    was when you read it in conjunction with the good faith effort.

13              THE COURT:  Which page are you on?

14              MS. COLLINS:  On Page 31.  I think that time it

15    should have been compensatory and punitive and not actual.

16              THE COURT:  Yeah.  You're right.  Let's bring the

17    jury back in.

18              (Brief pause.)

19              THE COURT:  I'm just going to read this one, okay?

20              MS. COLLINS:  Yes, Your Honor.  Do they get a copy of

21    this that goes back with them?

22              THE COURT:  We'll change it.  We'll let you look at

23    it.

24              MS. COLLINS:  I mean, it's written correctly.  That

25    was just one of the ones that was verbally...

1          THE COURT:  Yeah.

2          (Brief pause.)

3          (The jury entered the courtroom, and the proceedings

4          continued as follows:)

5          THE COURT:  Giving you some exercise this morning.

6     Thank you for coming back.

7          Before you start your deliberations, I want to

8     correct one mistake I made.  I'm going to reread a portion of

9     what I instructed you on before, and I want you to -- it will

10    be correct in the written instructions that you receive, but I

11    wanted to read it correctly as well.  And I want you to follow

12    it as I'm about to read it and as it will be reflected on the

13    written copy.

14         In this case defendant claims that it made good

15    faith efforts to determine whether it could reasonably

16    accommodate plaintiff.  In cases where a discriminatory

17    practice involves the reasonable accommodation provisions of

18    the ADA, compensatory and punitive damages may not be awarded

19    where the employer demonstrates good faith efforts, in

20    consultation with the employee with a disability who has

21    informed the covered entity that accommodation is needed, to

22    identify and make a reasonable accommodation that will provide

23    such individual with an equally effective opportunity and

24    would not cause an undue hardship on the operation of the

25    business.  To prove this defense to damages, the defendant has

```
1    the burden of proving by a preponderance of the evidence that

2    defendant made a good faith effort, in consultation with

3    plaintiff, to try to identify a reasonable accommodation.

4            Okay.  So now that you have this correct version of

5    that portion of the instructions, I will once again ask you to

6    retire.  And once you get access to the documents that

7    Ms. Hinton is about to give you, you may begin your

8    deliberations.

9            (The jury exited the courtroom, and the proceedings

10           continued as follows:)

11           THE COURT:  All right.  Good catch, Ms. Collins.

12   Thank you.

13           All right.  So let me just review what nits we're

14   going to correct.

15           On Page 12 we're going to take out the third

16   paragraph, the repeat.

17           On Page 27 back should say front.  And I said

18   "front" when I read it to them, but I'm going to change back

19   to front on Page 27.

20           And I am going to, on 28, change -- at the

21   second-to-last line change their to his.

22           On Page 29, third line, compensatory will be

23   substituted by actual.

24           And that's it, I believe.  Anybody have a problem

25   with any of those?
```

```
1          (Brief pause.)

2          THE COURT:  Defense?

3          Plaintiff?

4          MR. WHITWORTH:  No objection to those changes.

5          THE COURT:  Okay.

6          MR. WHITWORTH:  Out of an abundance of caution, we

7    respectfully renew our previously stated objections.

8          THE COURT:  Okay.

9          Ms. Collins, anything further?

10         MS. COLLINS:  No, Your Honor.

11         THE COURT:  Okay.

12         MS. COLLINS:  No objection.

13         THE COURT:  All right.  There is also a typographical

14   error.  On Page 2 it said "is" instead of his.  We'll fix that

15   as well.  Okay?

16         All right.  We'll quickly modify these instructions,

17   and then Ms. Hinton will take them back for us.  Is there

18   anything else until we begin waiting, or continue to wait?

19   Any other issues that you want to raise?

20         MS. COLLINS:  No, Your Honor.

21         THE COURT:  All right.  Stay close.  Do we have cell

22   numbers for everybody?  If we don't, will you leave them with

23   Ms. Hinton?

24         MS. COLLINS:  We will.

25         THE COURT:  I'll let you know when we hear something.
```

```
 1    We're in recess.

 2              (Recess for deliberations.)

 3              THE COURT:  All right.  Counsel --

 4              Heith, I grabbed the wrong document.  Get the

 5    question.

 6              THE CLERK:  Sir?

 7              THE COURT:  Go get the question.

 8              We have a question from the jury.

 9              (Brief pause.)

10              THE COURT:  All right.  Here's the question.  I want

11    counsel -- well, come up.  Why don't you-all come up.  I just

12    noticed...

13              (A sidebar discussion was held between the Court and

14              counsel, as follows:)

15              THE COURT:  Here's the question.  I was about to say,

16    "Regarding questions, if we decide to award in plaintiff's

17    favor, is the amount awarded once for all three claims, or

18    awarded for each Claim 1, 2, and 3?"

19              Right before I started to read it -- I think that's

20    an S, but it could be a 5, "Regarding Question 5" or

21    "Regarding questions."  So I think I'm going to ask -- get --

22    send a communication back asking them what the second --

23    whether that's "Questions" or "Question 5," and then we'll

24    answer this question for them.  Okay?

25              MR. HARRIS:  Okay.
```

```
 1            THE COURT:  Everybody on board with that,
 2   Ms. Collins?
 3            MS. COLLINS:  Yeah.  I mean, you're just getting
 4   clarification, right?
 5            THE COURT:  Yeah.  I'm not telling them --
 6            MS. COLLINS:  Okay.  Yeah.  I mean, I'm this close to
 7   being slightly brain dead.  (Indicating.)  So I'm trying to
 8   like...
 9   (IN OPEN COURT)
10            THE COURT:  We need to ask the jury, the second -- I
11   don't want -- we're going to do it in writing, but the second
12   word is either "Questions" or "Question 5," and I can't tell
13   for sure.  So we're going to send a question back.  Do you have
14   a form going back?  Do you have it, Heith?  Do you have the
15   form?
16            THE LAW CLERK:  I'll--  Do you want me to type it up?
17            THE COURT:  Just say -- let's ask, "Does your
18   communication begin with the words 'Regarding --' quote,
19   'Regarding questions,' end quote, or, quote, 'Regarding
20   Question 5,'" end quote, question mark.
21            THE LAW CLERK:  How many copies?
22            THE COURT:  Make three copies.
23            (Brief pause.)
24            THE COURT:  Everybody on board with that?
25            MR. HARRIS:  Yes, Your Honor.
```

```
 1              MS. COLLINS:  Yes, sir.

 2              THE COURT:  The only -- I'm just going to change

 3    "Foreperson" to "Judge" and sign it and give it to them.

 4              MS. COLLINS:  Okay.

 5              (Brief pause) --

 6              THE COURT:  All right.  Ms. Hinton, let the attorneys

 7    see that before you -- just let them make sure they're okay

 8    with the --

 9              THE COURTROOM DEPUTY:  Yes.  I'm sorry.

10              THE COURT:  -- signed copy.

11              (Brief pause.)

12              MS. COLLINS:  Yes, ma'am.

13              THE COURT:  All right.  Mr. Harris, Ms. Collins, both

14    good?

15              MR. HARRIS:  Yes, Your Honor.

16              MS. COLLINS:  Yes, Your Honor.

17              (Brief pause.)

18              THE COURT:  I don't think this will take long to

19    answer that, so...

20              (Brief pause.)

21              THE COURT:  So their response is, "Regarding

22    question, no S, no 5."  I'm going to ask them just to rewrite

23    their question.

24              MR. HARRIS:  Can they type it?

25              THE COURT:  All right.  Just --
```

1          MS. COLLINS:  So the -- so we could just disregard

2  the first part of that and just read the question?

3          THE COURT:  I don't -- I mean, I'll let you look at

4  this.  I don't think this -- I don't think that they answered

5  our question, at least the one I asked.  So let's say, "Please

6  rewrite your question."

7          MS. COLLINS:  Neatly, not cursive.

8          THE COURT:  No, say, "Rewrite your communication,"

9  instead of "question."  "Please rewrite your communication."

10          THE LAW CLERK:  "Original communication"?

11          THE COURT:  No.

12          (Brief pause.)

13          THE COURT:  Ms. Hinton, will you let them see that?

14  The attorneys.

15          THE COURTROOM DEPUTY:  Oh, the attorneys.  Sorry.

16          (Brief pause.)

17          MR. HARRIS:  Okay.

18          MS. COLLINS:  Yes, ma'am.

19          THE COURTROOM DEPUTY:  Okay.

20          (Brief pause.)

21          THE COURT:  Okay.  Now they said, "Please disregard.

22  Thank you."  So let's wait and see if they ask anything else in

23  writing.  They have -- they did ask Ms. Hinton for a

24  calculator, and the usual practice is to provide that.  I'm

25  having one brought down.  We should have that in a moment.

1           (Brief pause.)

2           THE COURT:  Anybody want to inspect the calculator?

3           MR. HARRIS:  (Moving head from side to side.)

4           THE COURT:  Okay.  We're going to provide the jury a

5    calculator.  And we're in recess again.  Thank you.

6           (Brief recess.)

7           THE COURT:  All right.  Ladies and gentlemen, I've

8    been handed a note that we have a verdict, the jury's reached a

9    verdict.  So my plan is to call them back in, when Ms. Hinton

10   gets back, and receive the verdict.  Is there anything else to

11   do before we do that?

12          MS. COLLINS:  (Moving head from side to side.)

13          THE COURT:  All right.

14          (Brief pause.)

15          (The jury entered the courtroom, and the proceedings

16          continued as follows:)

17          THE COURT:  All right.  It's my understanding--  Have

18   a seat.  It's my understanding that the jury has reached a

19   verdict.  I would -- I believe Ms. Post is the foreperson.

20          Ms. Post, has the jury unanimously agreed to a

21   verdict?

22          THE FOREPERSON:  Yes, Your Honor.

23          THE COURT:  You have?  Why don't you stand and answer

24   audibly so we can pick it up for the record.

25          THE FOREPERSON:  Yes, Your Honor, we've reached a

verdict.

        THE COURT:  All right.  Thank you.  Will you hand
that verdict form to Ms. Hinton, please.

        (Brief pause.)

        THE COURT:  All right.  Thank you.

        Ms. Hinton, will you please read the verdict.

        THE COURTROOM DEPUTY:  "Verdict Form.

        "Question Number 1.  Claim 1.  Do you find that the
plaintiff has proven by a preponderance of the evidence all of
the elements required to establish that the defendant
terminated plaintiff because of his disability?

        "Yes.

        "Claim Number 2.  Do you find that the plaintiff has
proven by a preponderance of the evidence all of the elements
required to establish defendant failed to engage in the
interactive process in good faith as required under Americans
with Disabilities Act?

        "Yes.

        "Claim Number 3.  Do you find that the plaintiff has
proven by a preponderance of evidence all of the elements
required to establish that the defendant failed to accommodate
plaintiff in his compliance with the Americans with
Disabilities Act?

        "Yes.

        "Question Number 4.  Do you find that the defendant

1  has proven by a preponderance of the evidence that it has

2  demonstrated good faith efforts, in consulting with the

3  plaintiff, to identify a reasonable accommodation?

4          "No.

5          "Damages.  Do you find that the defendant [sic] has

6  proven by a preponderance of the evidence that he should be

7  awarded back pay?

8          "Yes.

9          "If your answer is yes, the jury awards the

10  plaintiff back pay damages in the amount of $181,522.61.

11          "Claim Number 1, Claim Number 2, and Claim Number 3.

12          "Do you find the def- -- the plaintiff has proven by

13  a preponderance of the evidence that he should be awarded

14  front pay?

15          "Yes.

16          "If your answer is yes, the jury awards the

17  plaintiff front pay damages in the amount of $315,000 in

18  connection with the following claims," and they checked all

19  that apply, and that's Claim Number 1, Claim Number 2, and

20  Claim Number 3.

21          "Question Number 7.  Do you find that the plaintiff

22  has proven by a preponderance of the evidence that he should

23  be awarded compensatory damages?

24          "Yes.

25          "If your answer is yes, the jury awards the

plaintiff compensatory damages in the amount of 92,000 in

connection with the following claims," they checked all that

applied, "Claim Number 1, Claim Number 2, Claim Number 3.

     "Question Number 8.  Do you find that the plaintiff

has proven by a preponderance of the evidence that he should

be awarded nominal damages?"

     Nothing checked there.

     "Question Number 9.  Do you find that the plaintiff

has proven by a preponderance of the evidence that he should

be awarded punitive damages?

     "No."

     THE COURT:  All right.  Thank you, Ms. Hinton.

     Does any party want the jury -- to poll the jury?

     MS. COLLINS:  No, Your Honor.  We're good.

     MR. HARRIS:  No, Your Honor.

     THE COURT:  Okay.  Thank you.

     Ms. Hinton, will you please file and record the

verdict.

     THE COURTROOM DEPUTY:  Yes, Your Honor.

     THE COURT:  Ladies and gentlemen of the jury, thank

you, thank you all very much.  I know this has taken quite a

chunk out of your week.  You have just a few minutes left of

the workweek.  But you've been very patient.  I could tell that

you were paying very close attention to everything that

occurred.  And I know that on behalf of the parties and the

1   lawyers and myself and all of my staff, we definitely

2   appreciate that.

3           This is an important role that you play.

4   Ms. Elliott may know more about this than other jurors, given

5   her husband's profession, but this is one of the things that

6   keeps our nation strong, keeps our community strong.  This is

7   our way of resolving disputes without resorting to other ways

8   of resolving disputes that haven't worked nearly as well in

9   the past.  And I sincerely appreciate you, each one of you,

10  for your patience and your work.

11          I'm going to discharge you.  If you would wait for

12  just a moment in the jury room, I will -- I'd like to come and

13  meet you and bid you a good weekend.  So give us just a minute

14  to wrap up here.  I'll go ahead and dismiss you.

15          (The jury exited the courtroom, and the proceedings

16          continued as follows:)

17      THE COURT:  All right.  I'll remind you, Counsel,

18  that -- about Local Rule 48.1 that governs contact with jurors.

19  So, please note that, be familiar with that Rule 48.1, and make

20  sure that you follow it.

21          Is there anything else we need to take up today?  I

22  know there will probably be motions later, but is there

23  anything else today that we need to do?

24      MR. HARRIS:  Not today, Your Honor.

25      THE COURT:  Okay.

1         Ms. Collins?

2         MS. COLLINS:  No, Your Honor.

3         THE COURT:  All right.  Thank you all.  As I said

4    before, all the lawyers did a very good job.  I really

5    appreciate the way you handled yourself, the way you worked

6    together.  We don't always see that.  I don't want to rank you

7    as a group on -- and compare you to everybody else, but I will

8    tell you that with regard to your skills as advocates and your

9    professionalism, that you're easily at the top, and I truly,

10   truly, appreciate that.

11        MR. HARRIS:  Thank you, Judge.

12        THE COURT:  So we're adjourned, and we will wait to

13   hear from you.  Thank you very much.

14                      END OF PROCEEDINGS

15

16

17

18        I, Elizabeth B. Coffey, do hereby certify that I

19   reported in machine shorthand the proceedings in the

20   above-styled cause, and that this transcript is an accurate

21   record of said proceedings.

22

23                              s/Elizabeth B. Coffey
                                Elizabeth B. Coffey,
24                              Official Court Reporter

25